All right, if we could call the case please. 324-0645 in re-parentage of D.A.O. and P.C.O. Christy A. Cappelletti-Appley versus Dominic S. O'Neill-Appellant. Mr. O'Neill, if you're ready, you may proceed. Good morning, your honors. Yes, I have placed an affidavit here. Actually, I apologize. Statement of facts. You have to bear with me this is the first time for me doing this, but I have 15 minutes, I understand. And it's very simple. Mrs. Cappelletti-Appellant filed a child support in 2022 for the purpose of child support of my children and Dominic, actually Payton Chase O'Neill, which is a minor at the time, and for college contributions for my son, Dominic Aiden O'Neill. In September, she filed this, September of 22. She filed the information. She eventually got the information to the courts in February of 23, all of the financial affidavits. So when she filed it, she never filed the proper information with the financial affidavits with it, just filed for the petition. When she moved on from then, in February, this case has been going on for two years now. It's simple. At the time, I apologize, my tax returns were not complete last year. At the time of the trial, I was out on an extension. I then completed my tax returns, filed a motion for reconsider because the dollar amounts that the courts had placed upon me, I don't know where they came up with those numbers from. I didn't gross that dollar amount. So I don't even know they came up with the dollar amounts that they came up with for the judgment. They came up with a dollar amount of $173,150.02. I didn't gross that in 2022. I grossed $198,022, and I grossed $199,023. Since then, my tax returns have been completed both years and was brought to the have it reconsidered, and I was denied and basically said that I was fascist and not worthy and not credible was the words that was used. I would be asked the courts to take into consideration and use my tax returns, get the proper numbers. That's what we're here for. I'm not debating that I don't owe the money. I'm debating how much is owed, and I'm debating the correct amount to use towards paying child support. That's the first issue. The second issue would be, I was ordered to pay 50% of a hockey bill, bills that were produced. None of the bills were produced by Mrs. Capiletti. In the order from the court, it stated that all of the paperwork, there was a amount of evidence to show the $24,453, which 50% I am to be responsible for in the pay, but there was no evidence of that to show to the contrary, zero. The only evidence that was shown was all of my bills that were paid to my daughter's hockey program, the Struggle Mission, that I paid in any bills. Actually, in her statement, in the closing arguments for Mrs. Panels, she stated approximately $15,000 Mrs. Capiletti paid in 2022-23 for travel, and then in 2024, she paid $24,000, bear with me one second, $24,685, but there was no evidence of that to be shown whatsoever, just statements in court in the trial. Only thing that was shown was what I paid. I'm asking that the court reset, either make a decision and do it here or send it back to the trial court to recalculate the proper numbers for child support based on my income taxes for 2022 and 2023, and also 24 now, as they pass. The court has also placed upon that in 2024, I made $173,000. Again, that was in June of 2023. I mean, I'm sorry, June of 2024, which I don't know. I'm a general contractor. I'm a subcontractor, general contractor. I own my own business, so I don't know how they came up with a number of $173,000 six months into the year. Not to mention in 2024, I spent 25 days in an alcohol treatment program, so I was not working. So, I don't know, and another 45 days in the DuPage County Jail for incarceration for a DUI that I got. So, I was out of work for 70 days out of 2024, but they still managed to come up with a $173,000 amount of $173,000. And all these numbers that has come from the court is basically exact numbers from the closing arguments from Mrs. Panels, Attorney Panels, which Mrs. Capiletti's attorney. I mean, it's word for word down to how much I need to pay for hockey and how much I need to pay for it. I've paid the hockey bills. I paid the full hockey bill in one year, and I paid two hours the second year, and I've gotten no credit for it whatsoever. I paid over $34,000 to my children and given them between hockey bills, frat bills, college, and tuition bills, I paid, and I've gotten a zero amount of money for credit. Zero. Basically, I've gotten no to everything. I'm not here to debate that I don't owe for my children. I'm here to make it correct and right, to be corrected and make it properly right, and that I'm not put into a financial burden. Because right now, I'm also responsible for a third of college tuition, which is not even, I didn't even bring up because it was, I disagreed to it. The last bit would be, and I didn't bring it up, was I was ordered by the trial court to pay 50% of my daughter's high school bill at Bennett Academy, but I wasn't allowed to get any of the bills or the records. When we subpoenaed the records, the subpoena was squashed and said, there's no need for it. We got the testimony of Mr. Capiletti. That's all we need. So, I'm ordered to pay just under $8,000 for two high school bills for her junior and senior year, but have no access to see what the bills are. Isn't the Bennett tuition on the internet? Yes, sir, it is. It's on the internet. Not complicated. No, no, agreed. That wasn't the question. The question was my, she had put down a dollar amount, a total amounts of like $15,000 each year. She actually only paid $12,000 the first year and she paid $4,000 the second year. She got credits and she got, scholarships, but the original on her financial affidavits, she put down that she paid $15,000 the junior year and she put down, she paid $18,000 the senior year. That's where it came into a problem. All of Mrs. Capiletti's financial affidavits since day one that she submitted has been incorrect, down to dollar amounts, down to buying houses, not producing house, down to stocks. The court actually confirmed, Mrs. Capiletti said on the stand, it says she did not have McDonald's stock. And they actually added a $38,000 worth of McDonald's stock that she sold, added it to her income in 2023. So they confirmed exactly that she did have the stock. The only reason why we're asking for, I gave up on the college one. I mean, the high school one, because yes, you're right. It's on the internet. And after they came down to dollars and cents, they corrected it. After I confronted them, not them, my old attorney confronted them. They finally came up with it to be in $4,300. So total was $16,000 for the last two years. But it was simple to just release. The whole hidden secret is, what are we hiding? You want me to pay 50% of it to show me the bills. That's all. I'm still in court right now, Your Honor, with them on the college end of it. I didn't even put that in my appeal. I came in and get them to access the accounts for the bursar records to allow me to pay a third of what the court has ordered me to pay. I still cannot, as a year later, this happened a year ago, 14 months later, it's still not done. My son graduated. He's in grad school now. My daughter's her second year and I still have access to the records to get a Parent PLUS loan. But I'm ordered by the courts to pay a third of it. I didn't even put that in there because I'll figure it out with my kids paying it. But all I've done is spend time and money. This is going on for three years for something that should have been done in less than, I'd say, six months. It's dollar amounts. What I make, from my understanding, and I'm not an attorney, it's what I make. You put it into a calculator, a family calculator on a software program, and it comes out exactly what I'm supposed to pay. And that wasn't the case. I apologize. At the time, my tax returns were not done. I did not do them. I corrected that. I did them. I presented them to the courts and they basically said no. I don't even know how they came up with the numbers because I didn't even gross that in one year. Mr. O'Neill, when did you present your amended tax returns or your filed tax returns? I presented them to them on the motion to reconsider in October. It would have been October the 8th. October 7th, 2024? Yes, sir. I'm sorry. Was it October 7th, 2024? I'm looking at an order here. Yes. Motion to reconsider in October 7th of 2024. Yes, sir. It's file stamp the 8th. You're correct. Do we have a transcript of that hearing? Yes, we do. I think I submitted one. I don't have any further questions, Justice Prunan. I'm looking to answer your question here, but I don't see a transcript yet. No, no transcript of October of 2024. Not in the report of proceedings. I'm not seeing a transcript either. Okay. I apologize. I thought I had put that one in there. I put the full trial in there. You may continue. As I said, this is simple. I'm not here to argue on that I don't owe my children and pay for my college tuition and pay for their academics and so forth. I've paid. I've paid dearly and I've gotten zero credit for it. The first year they state that I didn't pay them, I paid the mission bill. It's called the Chicago mission for my daughter's travel hockey. I paid it in fall. The second year I paid two months of it. I mean, I paid one month and I paid the slush fund. It's called the equipment fund. And basically that's when I stopped it because I was pulled off of all communications from the team and the hockey program, but they wanted me to pay. When I paid this bills, I also put in there. I was at, she has down there on her bill. She has approximately $15,000 the first year that she paid in travel. The hockey program itself actually, and that is in there in the file. It's between seven and four and $7,000 for travel expenses. This is capitalized basically saying I, she paid 15,000 in travel expenses for the first year. Second year, she's stating she paid 7,000 in hockey expenses and she's paid $17,000 in travel expenses. But again, both of these that she stated to the court, there is not one bill, not one record, zero of it in any form besides the payments that I made and the payments to the hockey program was $7,000 that she made. She didn't make that, but all of the travel expenses for both years, zero credit cards, checks, written, nothing. Just basically the word of the trial. She paid for, and she actually put in her words, exact words, approximately $15,000 I paid in 2022-23. The club program itself states right on the contract. It's this, it's 9,800 for the 98, let's say 9,900 for the hockey program. It then states it's between 4,000 and 7,000 for travel. Expect between four and 7,000 the parent should pay in travel. This is capitalized like doubled it up on the first year and almost tripled it on the second year for travel expenses. Now, my kids have traveled and played hockey all since they've been eight years old. I've paid the bills. I know how much travel hockey is. It's not that, it's not, no one could afford it if it was that much. They also stayed in there that I stated in the trial, $25,000 is what it costs to play hockey. No, what I stated and I corrected it in my words was my children go to Bennett Academy and they both play travel hockey. Just to walk in the door for travel hockey is just under $10,000 and Bennett Academy is like 15,000 if you were to pay the full bill and not get any scholarship money. Yeah, so it's $25,000 a kid. We're living beyond our means is what I stated in the trial. We've been living beyond our means for a while now, struggling. My kids, I lived in Hinsdale. I was a contractor, a builder. I did really well for a while and then when the economy crashed, I lost a lot of money. But my, Christy, not even my wife, my mother, my children, they still living in that beyond the means and then putting me in a financial bind. With this right here, what the court has put me in is basically asking me to go out and borrow money and put myself in a financial bind. The child support- Mr. O'Neill? Yes, sir. Your time is up for this part of the argument. Justice Holdred or Justice Hedl, any questions at this time? Not at this time. Thank you. All right, Mr. O'Neill, you're going to have an opportunity in rebuttal. You're going to turn it over to Mr. Gotts now. Okay, thank you. Mr. Gotts? Yes, if it may please the court, I think the threshold issue in this case is whether there's been a sufficient record presented before this court in order to determine whether or not the trial court made an error. The record was filed, I believe, on or around February the 7th of 2025. And included with that record was the transcripts and the common law record. The exhibits, as far as I can tell from that record, do not seem to have made it over. I noted this in my appellee brief, which was filed, I think, sometime in April. So we've had about maybe five months for that omission to have been potentially corrected or otherwise rectified, and that has not occurred here. Mr. O'Neill's reply brief, I believe on page four or five of it, references as part of his argument showing the court erred, references several exhibits that he believes show that his argument should have overcame the trial court's decision. But again, it's not here. So we're sort of robbed that opportunity to determine whether or not the trial court made a mistake. As a matter of fact, one of the exhibits that was entered, I think, was a itemization of known and projected fees. And that's, I think, found on page 293 through 294 of the report of proceedings. So at least some of these exhibits that were admitted do go to Mr. O'Neill's argument, and they were not presented here for the court to be able to look at. And when it was brought to his attention, nothing was done in terms of trying to present that or rectify that issue. Turning to the child support issue, I think we still have the same conundrum here. As your honors pointed out, there was no transcript of what was or wasn't argued at that motion to reconsider. So we're not given really an opportunity to determine whether or not the court made a mistake. Additionally, long-standing case law on motions to reconsider is that the trial is not a practice round, and the motion to reconsider is not an opportunity to fix what opportunities you could have taken. It's within the court's discretion whether or not they want to accept new evidence or not. Usually there's a lot of reasons as to why it wasn't presented. We don't have really an opportunity to know what was or wasn't argued at that hearing because, again, there's no transcripts there. Finally, the court made credibility findings as to the parties. And there's long-standing case law on how a court can apply credibility findings when it comes to determining income. Part of the exhibits that were mentioned were a slew of bank statements and deposits. Again, things that we don't have to look at here. So I would submit that Mr. O'Neill has not overcame that big issue, which is providing this court with a sufficient enough record to determine whether or not the trial court made a mistake on either issue. Finally, very quickly in closing, to the extent that he's trying to argue matters that were outside of his appellate brief, those were not properly briefed. So the extent that he might be trying to get a if it wasn't raised in the brief, I think that matter has been forfeited for purposes of consideration. And that concludes my arguments. And I stand on the rest of the arguments raised in my appellate brief. ≫ Justice Holdred, your handle? ≫ No. ≫ Thank you, counsel. Mr. O'Neill, you have the last word, rebuttal. ≫ So to answer that last thing, you're right, absolutely. I did not put the ones in the school. I just made it clear that what's been going on, I'm not even arguing the high school anymore. Because I've just come to the conclusion that the numbers they finally gave me after the fourth time and me confronting them was correct. And I will deal with that and pay for that portion. As for the tax returns, I was not, and again, I'm not an attorney, I'm a contractor, a builder, a home builder. I'm trying to do the best I can because I can't afford a lawyer anymore. I've exhausted every bit of money wasted on this, when this could have been done easy. The bottom line is my children need the money for school, and they need the correct amounts, and that's it, and not me spending it on legal bills. I can hire half a dozen lawyers for what reason? It's just my tax returns and what I make. I can't, you can't take something I don't have. If I don't make it, you can't, and I don't even know where that number came out. They came up with a number of that saying that I made $65 an hour based on this many hours and all that. I'm a general contractor. Who paid me the $65 an hour? Who was it? No. Anyone in the business. And all the money I brought in, they had all at the time. I apologize again. Tax returns, we're not done. But I did do them. I just felt like maybe the trial court would have said, hey, you know what, Mr. O'Neill, we want to determine it and get it right, so you pay the right amount. Get your stuff together, and you didn't get it all together. When can you get it together? We're just coming up with a number, and that's it. I was shocked by the number because the number is double what I brought in my first year. I only brought in $100,000. It's double, almost double. I don't even know how you come up with the number. That's all I can say. In hockey bills, I paid the full year and got zero credit for it. All of it shows in my bank statements. Everyone can argue about my taxes. They got every bank statement for two and a half years. Personal, business, business checkbook, credit cards, everything. Every bit of it for all the information. It showed every payment, every deposit to my children, for hockey bills, for school, whatever. It was all in there, the statements. It was just overlooked. I understand that the trial courts cannot always just sift through it all, and that was my mistake on the taxes, but the taxes are done now, and I have the proper numbers. I asked that the court use the proper numbers and not these fascist numbers they came up with. That's it. That's my end. Very well. The court thanks both sides for their arguments. We will take the matter under advisement and issue a decision in due course. Court is adjourned until the next argument. Thank you very much. Thank you.